IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

JULIE BELL and )
JODY SHEWMAKER, individually and )
on behalf of all others similarly )
situated, )
          )   Case No.  4:20-cv-00541-RK
       Plaintiffs, )
          )
     v.       )
          )
DEVA CONCEPTS, LLC

       Defendant.

## FIRST AMENDED CLASS ACTION COMPLAINT

    Plaintiffs Julie Bell and Jody Shewmaker ("Plaintiffs"), on behalf of themselves and all

other similarly situated, state and allege the following for their causes of action and Class Action

Complaint against Defendant Deva Concepts, LLC, d/b/a DevaCurl ("Defendant" or

"DevaCurl"):

## INTRODUCTION

    1.    Plaintiffs bring this class action on behalf of themselves and all other similarly

situated consumers who purchased Defendant's DevaCurl No-Poo Original non-lathering

conditioning cleanser (the "No-Poo Product"), DevaCurl One Condition® Original hair-

conditioner, DevaCurl Light Defining Gel, DevaCurl Low-Poo Original cleanser, DevaCurl Low-

Poo Delight cleanser, DevaCurl No-Poo Decadence cleanser, DevaCurl One Condition® Delight

hair-conditioner, DevaCurl One Condition® Decadence hair-conditioner, Melt into Moisture

Mask, Styling Cream, DevaCurl Leave-In Decadence conditioner, Super Stretch Coconut Curl

Elongator, Wavemaker, DevaCurl Ultra Defining Gel, DevaCurl Buildup Buster, DevaCurl High

Shine, and DevaCurl B'Leave-In (collectively, "the Products"), which are used for personal cosmetic purposes.

2.       Defendant formulates, manufactures, advertises and sells the Products to consumers throughout the United States, including in the State of Missouri.

3.       In 2002, Defendant rose to prominence when it created and developed the formula for the DevaCurl No-Poo Original, i.e., the No-Poo Product, which is marketed as containing no sulfate, and is also marketed as an "innovative new haircare category" and a "game-changing alternative to traditional shampoo."[1]

4.       Defendant has further marketed the No-Poo Product as a "first-of-its-kind, no-suds conditioning cleanser" that is "free of sulfates, parabens, and silicones" and that is used "to gently cleanse curls without stripping the natural oils they need to look healthy, bouncy and simply gorgeous."

5.       In short, the Products are marketed and sold as providing benefits over conventional hair care and cosmetic products.  Consumers pay a premium over the cost of traditional retail and salon shampoos for Defendant's Products, based upon the representations Defendant makes about the Products.

6.       Contrary to those representations, the Products are harmful to consumers and detrimental to the quality and appearance of their hair.  The Products cause hair loss, hair thinning, breakage, excessive shedding, scalp irritation, skin burning and other issues during normal use by consumers.

7.       Defendant does not warn consumers that use of the Products may result in these adverse outcomes, and instead makes numerous assertions about the gentile and beneficial nature

---

[1] https://www.devacurl.com/us/curl-101/our-story

of the Products, which are false, deceptive and misleading and have harmed Plaintiffs and the Class Members.

8.    Defendant conceals and fails to disclose the defective nature of its Products by actively misleading consumers into believing that the hair loss and shedding caused by the Products is "normal" and "common," that even excessive shedding of over 100 strands of hair per day is "common," and that shedding is not preventable.[2]

9.    On information and belief, Defendant has knowledge of the hair loss and scalp irritation caused by the Products.  For example, Defendant  has received multiple  FDA complaints of hair loss and scalp irritation beginning in February 2018.  There have been hundreds of complaints posted on social media sites like Facebook.  Social media influencers have spread the word about the hair loss and scalp irritation caused by Defendant's Products.  Major media outlets including the ABC television affiliate in New York City have exposed the products' flaws.[3]  Defendant has explicitly acknowledged the reports of hair loss and scalp irritation associated with its products, going so far as to post an explanatory statement on its website, prominently featured with a link entitled "a message for our devas" in the top right corner of the website's homepage.[4]

10.    Despite notice and knowledge of the problems caused by the Products, Defendant has not recalled the Products, has not provided any warnings of the known risks, has denied that the Products cause the reported health issues, and has not offered its customers any compensation for their damages.

11.    Had Plaintiffs and other Class Members known that Defendant's Products would

---

[2] https://www.devacurl.com/blog/hair-shedding-101/
[3] https://abc7ny.com/health/customers-say-curly-styling-products-made-their-hair-fall- out/5906690
[4] https://www.devacurl.com/us/deva-community-statement

cause hair loss, scalp irritation and other problems, they would not have purchased the Products.

12.     Plaintiffs and each of the Class Members have been damaged and suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices as set forth herein by Defendant and seek compensatory damages and injunctive relief.

## PARTIES

13.     Plaintiff Julie Bell is a citizen and resident of Missouri.

14.     Plaintiff Jody Shewmaker is a citizen and resident of Missouri.

15.     Defendant Deva Concepts LLC is incorporated in Delaware with its principal place of business at 560 Broadway Suite 206 New York, NY 10012 United States. Defendant has advertised and sold the DevaCurl Products in Jackson County and throughout the state of Missouri.

## JURISDICTION AND VENUE

16.     Venue is appropriate in the United States District Court for the Western District of Missouri because Plaintiffs purchased the Products in this District and the false representations, deceptive, dishonest and misleading sales practices and unjust enrichment occurred in Jackson County, in this District and elsewhere in the state of Missouri.

17.     The United States District Court for the Western District of Missouri has personal jurisdiction over Defendant because Defendant transacts business in Missouri, with its various advertising methods and product sales directed toward Missouri residents. Additionally, Plaintiff Bell and Plaintiff Shewmaker purchased the Products at issue in Jackson County, Missouri.

## FACTUAL ALLEGATIONS

18.     At all relevant times, Defendant has marketed the Products through national

4

marketing and advertising campaigns as being "free of harsh ingredients," a complete replacement for traditional shampoo that creates healthy curly hair without color fading, and as a "game-changing alternative to traditional shampoo."

19.    On Defendant's website, it gives a three-step process for using the No-Poo Product and the DevaCurl One Condition® Original conditioner.  Step one is "Wet curls and apply a generous amount to your scalp, scrubbing it in. Remember it won't lather, but it's still working!"

20.    For step two it states, "Rinse thoroughly by scrubbing your scalp and letting the water move No-Poo Original through your ends."

21.    Step three states, "Follow with One Condition® Original for additional moisture."  Defendant's website further states, "When it comes to curls, it's all about condition, condition, condition.  So apply, rinse and repeat as often as needed!"

22.    However, despite using Defendant's three step process, the No-Poo Product causes users to sustain scalp irritation, hair loss, and/or balding during normal use. Users have hair fall out in varying degrees during and immediately after use. The hair loss, scalp irritation and balding suffered by Plaintiffs and Class Members is embarrassing and can be extreme in certain instances.

23.    The hair loss suffered by Plaintiff and Class Members is not limited to the No-Poo Product. Indeed, many consumers, including Plaintiff, have experienced hair loss, "shedding" and/or "thinning" after using Defendant's Products.  Some users have had hair fall out in "clumps" and have suffered extreme distress as a result.

24.    Consumers of the Products pay a premium far and above what normal hair care products cost. For example, Defendant's No-Poo Product sells for $46.00 as compared to similar

retail products sold for as little as $3.99, a difference of more than $42.

25.     Consumers pay a premium for Defendant's Products because of the benefits Defendant claims they provide above and beyond normal hair care products. For example, in respect to Defendant's No-Poo Product, Defendant claims that the No-Poo Product is "Sulfate Free," that it is used to "gently cleanse," that it is not "harsh" or made with "harsh ingredients," that it gives "your curls what they need and nothing they don't," and that it comes with benefits such as the ability to keep hair from drying out and maintain composure.

26.     Similarly, with regard to its One Condition® Original product, at all relevant times, Defendant has marketed this product through national marketing and advertising campaigns as a premium product that is "free of harsh ingredients" and made with "nourishing, hydrating ingredients."

27.     Neither the product packaging nor any other advertising from Defendant warns users that the Products cause scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding, or any related injury during normal use. For example, nowhere on the labeling of the No-Poo Product does it mention scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding, or any related injury during normal use:









28.    Nowhere on any of the packaging of the other of the Products does it state that scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding, or any related hair injury occurs from normal use of the Products.

7

29.     Far from being the products promised by Defendant, the Products cause scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding. The hair loss is not *de minimis*.  Consumers who suffer hair loss often lose significant amounts of hair and the hair loss persists as long as the user uses the Products.

30.     Many consumers who suffered scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding from the Products saw their symptoms stop by discontinuing their use of the Products.

31.     Every consumer who purchased the Products without the true facts about the Products and disclosure of the inherent health risks prior to purchase was injured when, instead of obtaining safe, natural, proven, guaranteed to promote hair growth, strengthening, and conditioning cleanser, consumers obtained Defendant's unreasonably dangerous and defective Products. Consumers have been further injured by way of requiring expensive professional hair treatment and medical treatment as a result of injuries caused by the Products.

32.     By marketing, selling and distributing the Products to purchasers in the state of Missouri, Defendant made actionable statements that the Products were free of defects and safe and fit for their ordinary intended use and purpose.

33.     Further, Defendant concealed what they knew or should have known about the safety risks resulting from the material defects in the Products.

### *Plaintiffs' Purchases and Experience with the Products*

34.     Plaintiff Julie Bell purchased and used the Products over the last 4-5 years. Plaintiff purchased the Products from third-party retailers in Jackson County, Missouri.  During the class period, Plaintiff purchased numerous Products, including DevaCurl Ultra Defining Gel, DevaCurl Low-Poo Original cleanser, DevaCurl B'Leave-In, Wavemaker, DevaCurl One

Condition® Decadence hair-conditioner, DevaCurl Buildup Buster, DevaCurl Light Defining Gel, DevaCurl One Condition® Original hair-conditioner, DevaCurl High Shine, DevaCurl No-Poo Original non-lathering conditioning cleanser, and Super Stretch Coconut Curl Elongator, among other Products.

35.     During the time she used the Products, Plaintiff Bell began to experience the problems discussed herein.  For example, Plaintiff Bell experienced excessive shedding, thinning and breakage of her hair.  As she suffered the hair loss, she began to notice the bottom of her scalp felt as if it had been burned.  She suffered a painful, red burning parch at the bottom of her scalp, which began to itch.

36.     Plaintiff Bell stopped using the Products.  After stopping use, her excessive hair loss subsided and the redness and scalp irritation also went away.

37.     Plaintiff Jody Shewmaker purchased and used the Products over the last 4-5 years.  Plaintiff purchased the Products from third-party retailers in Jackson County, Missouri.  During the class period, Plaintiff purchased numerous Products, including DevaCurl No-Poo Original non-lathering conditioning cleanser, DevaCurl Low-Poo Delight cleanser, DevaCurl One Condition® Original hair-conditioner, DevaCurl Flexible Hold Hairspray and DevaCurl Frizz-Free Volumizing Foam, among other Products.

38.     During the time she used the Products, Plaintiff Shewmaker began to experience the problems discussed herein.   For example, Plaintiff Shewmaker experienced excessive shedding, thinning and breakage of her hair.

39.     Plaintiff Shewmaker stopped using the Products.   After stopping use, her excessive hair loss subsided.

40.     Plaintiffs reasonably relied upon Defendant's representations about the Products

9

and Defendant's own labeling concerning the particular qualities and benefits of the Products.

41.     All reasonable consumers would consider Defendant's Products to be suitable for use as labeled and would not have any understanding or way to know that Defendant's Products were of uncertain quality and/or that use of Defendant's Products would cause the irritation and hair loss described herein.

42.     A reasonable consumer would consider Defendant's labeling when looking to purchase the Products.

43.     As a result of using Defendant's Products, Plaintiffs and Class Members:  (a) paid a sum of money for a product that was not as represented; (b) received a lesser product than labeled, advertised and marketed; (c) were deprived of the benefit of the bargain because the Products were different than what Defendant represented; (d) were deprived of the benefit of the bargain because the Products had less value than what was represented; (e) did not receive Products that measured up to their expectations as created by Defendant; and (f) suffered similar harm and damage, including but not limited to hair loss, hair thinning, breakage, excessive shedding, scalp irritation, skin burning and other issues.

### Plaintiffs' Experiences are Similar to Those of Other Consumers

44.     Plaintiffs' experiences are not isolated or outlying occurrences. There are many stories online from other Class Members complaining of the same issues with the Products.

45.     As reported by ABC News, stylist and author Stephanie Mero, who goes by the handle "thecurlninja" on social media, had been a longtime proponent of DevaCurl's Products, using them to maximize her customers' natural curls in her salon and encouraging her thousands of followers online to use them to help bring out their own curls.[5]

---

[5] https://abc7ny.com/5906690/

46.     According to the report, Ms. Mero says that changed when she started to see damage in her own hair. She eventually stopped using the Products and recommended that her clients do the same. Before and after photos show the damage Defendant's Products caused to Ms. Mero's hair.

47.     As further reported, Ms. Mero went on to create a Facebook group for others who believe DevaCurl is behind their hair damage. Currently, there are more than 35,000 Members.

48.     According to the report, Ms. Mero says she'll continue speaking out about the issue until DevaCurl issues a recall and the FDA takes the issue more seriously.

49.     According to reports, Ms. Mero isn't alone. Another social media influencer with more than 200,000 subscribers posted her own video on January 31 where she speaks about her own experience with Defendant's Products.[6]

50.     Similarly, a thread on Sephora originally posted in 2016 is now flooded with comments from customers complaining about the Products and looking for answers.[7]

51.     There are endless complaints online and in other social media outlets illustrating the problems with the Products and the common and similar damages and harm suffered by users of the Products.

### *Materiality of Defendant's Deceptive Conduct*

52.     Consumers seek out Defendant's Products specifically for the benefits that Defendant claims they provide: namely, to promote healthier hair than other traditional cleansers and conditioners. Consumers purchase the Products due to Defendant's claim they will not dry out hair and maintain maximum color.

---

[6] https://www.youtube.com/watch?v=nuo8UCcyDhg
[7] https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/m-p/2411473

53.     Consumers also pay a premium for the Products over comparable hair products on the market.

54.     Defendant misleads consumers into thinking they purchased a premium product with greater health benefits and even say that excessive shedding is common, normal and non-preventable; however, users have revealed that in fact the Products cause hair loss, scalp irritation, thinning, breakage, balding during normal use. Further, consumers have also shown that changing from using the Products eliminates shedding.

55.     Risk of hair loss, scalp irritation, thinning, breakage, or balding are material risks to consumers.

56.     Failing to include hair loss, scalp irritation, thinning, breakage, balding, on the labeling, product packaging, and/or by misleading customers by stating that shedding is "normal," "common," and "non-preventable" are material misrepresentations for consumers of the Products.

57.     When Defendant manufactured, marketed, advertised, labeled, distributed and sold Plaintiffs and the Class Members the Products, Defendant knew or should have known the Products were not gentle, did not provide enhanced health benefits, did not provide the advertised qualities, and would contribute to cause users to suffer hair loss, scalp irritation, thinning, breakage, balding during normal use.

58.     Plaintiffs use the Products in the manner in which Defendant advised the Products should be used.

59.     As a result of Defendant's Products not being as labeled, advertised, marketed, warranted and promised, Defendant breached express and implied warranties, fraudulently or negligently induced Plaintiff and the Class Members to purchase their products through material

misrepresentations, acted in a negligent manner and were unjustly enriched.

60.    Defendant's manufacture, labeling, and sale of the Products was deceptive and misleading in at least the following respects:

    a.  Defendant deceptively packaged their Products as suitable for use as quality beauty products;

    b.  Defendant engaged in deceptive and misleading conduct in failing to provide an adequate notice, disclaimer, or warning on the labels;

    c.  Defendant engaged in misleading and deceptive conduct in failing to disclose that the Products were not gentle, did not provide enhanced health benefits, did not provide the advertised qualities, and would contribute to cause users to suffer hair loss, scalp irritation, thinning, breakage, balding during normal use.

61.    The conduct listed in paragraph 61(a)-(c) constitutes deceptive business practices in violation of Missouri Revised Statute 413.115: "**Deceptive business practices, prohibited**- A person commits the crime of deceptive business practice if in the course of engaging in a business, occupation or profession, he or she reckless: (4) Sells, offers or exposes for sale misbranded commodities."

62.    This action is brought by Plaintiff against Defendant to recover all money paid by Plaintiffs and Class Members to Defendant for purchase of Products which were labeled and sold in the dishonest, misleading, and deceptive manners noted herein, for recovery of the damage and harm suffered by Plaintiffs and the Class Members, for punitive damages, attorneys' fees, costs, and for all other remedies available to those aggrieved by Defendant's conduct.

## CLASS ACTION ALLEGATIONS

63.     Plaintiffs bring this Class Action pursuant to Rule 23 of the Federal Rules of Civil

Procedure, on behalf of themselves and the following Class of similarly situated persons:

> All persons and other entities who purchased the Products in
> Missouri at any point in time from May 27, 2015 to present,
> excluding any persons and/or entities who purchased for resale.

64.     Also excluded from the Class are Defendants, including any parent, subsidiary,

affiliate or controlled person of Defendants; Defendants' officers, directors, agents, employees and

their immediate family members, as well as the judicial officers assigned to this litigation and

members of their staffs and immediate families.

65.     The Products at issue were sold across Missouri through retailers.  The Class

Members may be identified through use of sales receipts, affidavits, or through sales records.

66.     The proposed Class is so numerous that joinder of all Class Members is

impracticable.

67.     There are questions of fact and law common to the Class which predominate over

questions affecting only individual Class Members.  The questions of law and fact common to

each Class arising from Defendant's actions include, without limitation, the following:

a.  Whether the Products are defective such that they cause hair loss, scalp irritation
    or balding;

b.  Whether and when Defendant had exclusive knowledge that the Products are
    defective but failed to disclose the defect to the public;

c.  Whether the Products provide the benefits claimed by Defendant on the labeling,
    packaging, and/or in the course of its marketing;

d.  Whether Defendant's conduct violated Missouri's Merchandising Practices Act;

e. Whether Defendant's conduct constituted a breach of applicable warranties;

f. Whether Defendant's acts and omissions make it liable to Plaintiffs and Class Members for negligence or strict products liability;

g. Whether Defendant engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by objectively misleading Plaintiffs and putative Class Members;

h. Whether Defendant's conduct, as alleged herein, was likely to mislead a reasonable consumer;

i. Whether Defendant's statements, concealments and omissions regarding the Products were material, in that a reasonable consumer could consider them important in purchasing the Products;

j. Whether, as a result of Defendant's omissions and/or misrepresentations of material facts, Plaintiffs and members of the Class have suffered an ascertainable loss of monies and/or property and/or value;  and

k. Whether Plaintiffs and Class Members are entitled to monetary damages, injunctive relief, and/or other remedies and, if so, the nature of any such relief.

68.     The Representative Plaintiffs' claims are typical of those in the putative Class because she purchased Defendant's Products and was similarly treated.

69.     Plaintiffs are an adequate representative of the Class because her interests do not conflict with the interests of other members of the Class.  The interests of the other Class Members will be fairly and adequately protected by Plaintiffs and counsel, who have extensive experience prosecuting complex litigation and class actions.

70.     A Class Action is the appropriate method for the fair and efficient adjudication of this controversy.  It would be impracticable, cost prohibitive, and undesirable for each member of the Class to bring a separate action.  In addition, the presentation of separate actions by individual Class Members creates the risk of inconsistent and varying adjudications, establishes incompatible standards of conduct for Defendant, and/or substantially impairs or impedes the ability of Class Members to protect their interests.  A single Class Action can determine, with judicial economy, the rights of the members of the Class.

71.     A Class Action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of this controversy.

72.     Class certification is also appropriate because Defendant has acted or refused to act on grounds generally applicable to the Class. The Class Action is based on Defendant's acts and omissions with respect to the Class as a whole, not on facts or law applicable only to the representative Plaintiffs.  All Class Members who purchased Defendant's products were treated similarly.  Thus, all Class Members have the same legal right to an interest in relief for damages associated with the violations enumerated herein.

73.     Plaintiffs asserts in Counts I through VII, below, the following claims on behalf of herself and the Class:

- Count I – Breach of Express Warranty

- Count II – Breach of Implied Warranty of Merchantability

- Count III – Unjust Enrichment

- Count IV – Negligence

- Count V – Negligent Misrepresentation

- Count VI – Missouri Merchandising Practices Act, Mo. Rev. Stat. §407.010
  *et seq.* ("MMPA").

## <u>COUNT I</u>
### (Breach of Express Warranty)

74.     Plaintiffs incorporate by reference all preceding paragraphs of this Class Action Petition as if fully set forth herein.

75.     Defendant sold and Plaintiffs purchased the Products from authorized resellers of Defendant's products.

76.     Defendant represented in its marketing, advertising, and promotion of the Products that the Products promote healthy hair, and are "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicons to gently cleanse curls," sourced from "the highest-quality, good-for-you ingredients from around the world" and that they give "your curls what they need and nothing they don't."

77.     Defendant also advertises, markets, and promotes its Products, including but not limited to on its website, as coming with a "satisfaction guarantee," which states that if a consumer/purchaser is not "completely satisfied with a DevaCurl product that you purchased from us or one of our authorized resellers" "for any reason," Defendant will allow for a return and provide a full refund of the purchase price.

78.     Defendant made these representations to specifically induce Plaintiffs and Class Members to purchase the Products.

79.     Defendant's representations that the Products constituted part of the basis of the bargain between Defendant and Plaintiffs (and Class Members).

80.     Each of these representations and the complete satisfaction guarantee constitutes an express written warranty.

81.     Defendant breached its express warranties because the Products suffer from a latent and/or inherent defect that causes them to produce substantial hair loss and scalp irritation, rendering the unfit for their intended use and purpose. This defect substantially impairs the use, value and safety of the Products.

82.     The latent and/or inherent defect at issue herein existed when the Products left Defendant's possession or control and was sold to Plaintiffs and Class Members. The defect was undiscoverable by Plaintiffs and the Class Members at the time of purchase of the Products.

83.     While Defendant expressly disavows all warranties or representations, this disavowal is limited by its own plain language to "any products or services ordered or provided via the [Defendant's] website. None of the Products at issue in this case (including those purchased by the Plaintiff) were products "ordered or provided via the [Defendant's] website," and all persons who purchased the Products from Defendant's website are expressly excluded from the putative Class.

84.     Plaintiffs and the Class are entitled to bring this class action and are not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs and the Class.

85.     Furthermore, affording Defendant an opportunity to cure its breach of written warranties would be unnecessary and futile here. Defendant was placed on reasonable notice of the defect in the Products and breach of the warranties based on numerous complaints received directly and indirectly from Plaintiffs and the Class, including without limitation multiple complaints to the FDA beginning in February 2018, and have had ample opportunity to cure the defect for Plaintiffs and the Class, but have failed to do so, instead denying the claims and putting out public statements denying that there are any issues with the Products.

86.     As a direct and proximate result of Defendant's breaches of these express warranties, Plaintiffs and Class Members have been damaged because they did not receive the products as specifically warranted by Defendant. Plaintiffs also paid a premium for Defendant's Products that did not conform to Defendant's express warranties.

### COUNT II
**(Breach of Implied Warranty of Merchantability)**

87.     Plaintiffs incorporate by reference all preceding paragraphs of this Class Action Petition as if fully set forth herein.

88.     Defendant sold the Product to Plaintiffs and Class Members for use as described above.

89.     By placing such products into the stream of commerce, and by operation of law, Defendant impliedly warranted to Plaintiffs and Class Members that the Products were of merchantable quality (*i.e.*, a product of a high enough quality to make it fit for sale, usable for the purpose it was made, of average worth in the marketplace, or not broken, unworkable, contaminated or flawed or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

90.     Defendant breached the implied warranty of merchantability because the Products suffer from a latent and/or inherent defect that causes them to produce substantial hair loss and scalp irritation, rendering the unfit for their intended use and purpose. This defect substantially impairs the use, value and safety of the Products.

91.     The latent and/or inherent defect at issue herein existed when the Products left Defendant's possession or control and was sold to Plaintiff and Class Members. The defect was undiscoverable by Plaintiffs and the Class Members at the time of purchase of the Products.

92.     Defendant has misled consumers into believing the Products were "Sulfate Free," that they are used to "gently cleanse," that they are not "harsh" or made with "harsh ingredients," and that hair loss and shedding (even excessive shedding) was "common," "normal," and "not preventable." Defendant took advantage of Plaintiffs' and the Classes' trust and confidence in its brand, and deceptively sold the Products, knowing that they caused hair loss, shedding, and scalp irritation.

93.     Defendant's intended beneficiaries of these implied warranties were ultimately Plaintiffs and the Classes, not distributors who sold the Products. Moreover, Defendant exercises substantial control over which outlets can carry and sell the Products, which are the same places that Plaintiffs purchased them. In addition, Defendant's warranties are in no way designed to apply to the distributors that purchase the Products in bulk and then sell them on an individual basis to each consumer. Individual consumers are the ones who ultimately review the labels, which Defendant knows, prior to making any purchasing decisions. As a result, these warranties are specifically designed to benefit the individual consumer who purchases the Products.

94.     Plaintiffs and Class Members sustained damages as a direct and proximate result of Defendant's breaches in that they paid a premium for the Products that they would not have otherwise paid. Plaintiffs and the Class also did not receive the value of the Product they paid for—the Products are worthless or worth far less than Defendant represents due to the latent and/or inherent defect that causes hair damage, hair loss and/or scalp irritation.

95.     Plaintiffs and the Class have sustained, are sustaining, and will sustain damages if Defendant continues to engage in such deceptive, unfair, and unreasonable practices.

96.     Accordingly, Plaintiffs are entitled to injunctive relief, attorneys' fees and costs, and any other relief that the Court deems just and equitable.

97.     As a result of the breach of the implied warranty of merchantability, Plaintiffs Class Members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## COUNT III
### (Unjust Enrichment)

98.     Plaintiffs incorporate by reference all preceding paragraphs of this Class Action Petition as if fully set forth herein.

99.     Plaintiffs conferred benefits on Defendant by purchasing the Products at a premium price.

100.    Defendant has knowledge of such benefits.

101.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class Members' purchases of the Products, because the Defendant will obtain the benefits conferred by Plaintiffs and the Class Members without adequately compensating Plaintiffs and the Class Members therefore. Defendant failed to adequately compensate the Plaintiffs for the benefits conferred by providing the Products without those products having the characteristics and benefits promised.

102.    Retention of those moneys under these circumstances is unjust and inequitable because (a) Defendant falsely and misleadingly represented that the Products promoted healthy hair, were "Sulfate Free," that they are used to "gently cleanse," that they are not "harsh" or made with "harsh ingredients," and that hair loss and shedding (even excessive shedding) was "common," "normal," and "not preventable." (b) Plaintiffs paid a price premium for the Products based on Defendant's false and misleading statements; and (c) the Products did not have the

characteristics and benefits promised because of the latent and/or inherent defect that causes hair loss and scalp irritation.

103.    This has resulted in injuries to Plaintiffs and members of the Class because they would not have purchased (or paid a price premium) for the Products had they known of the latent and/or inherent defect that causes hair damage, hair loss and/or scalp irritation in Defendant's Products.

104.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Class is unjust and inequitable, and because equity and good conscience requires restitution, Defendant must pay restitution to Plaintiff and members of the Class for its unjust enrichment, as ordered by the Court.

## COUNT IV
### (Negligence)

105.    Plaintiffs incorporate by reference all preceding paragraphs of this Class Action Petition as if fully set forth herein.

106.    At all times referenced herein, Defendant was responsible for designing, formulating, testing, manufacturing, inspecting, distributing, marketing, supplying and/or selling the Products to Plaintiffs and the Class.

107.    At all times material hereto, the use of the Products in a manner that was intended and/or reasonably foreseeable by Defendant involved substantial risk of hair loss and scalp irritation.

108.    At all times the risk of substantial hair loss and scalp irritation was known or knowable by Defendant, in light of the generally recognized and prevailing knowledge available at the time of manufacture and design, as described herein.   Adequate testing and/or manufacturing protocols would have revealed the serious deficiencies in the Products in that it

would have revealed the substantial hair loss and scalp irritation occasioned by use of the Products.

109.    Defendant owed a duty of at least reasonable care to the purchasers of the Products, including a duty to use reasonable care in the manufacture, sampling, testing, labeling and marketing of the finished Products.

110.    Defendant was negligent and breached its duties to Plaintiffs and the Class by engaging in the acts and omissions alleged herein, including by:

   a.   Distribution and use of misleading labeling information regarding the Products;

   b.   Failing to adequately design and manufacture the Products so that they would not cause the substantial hair loss, scalp irritation or other problems occasioned by use of the Products;

   c.   Failing to perform adequate testing on the Products, which were defectively designed, formulated, tested, manufactured, inspected, distributed, marketed, supplied and/or sold to Plaintiff and the Class;

   d.   Failing to adequately warn and instruct purchasers about the true nature of the Products and potential harm they could cause; and

   e.   Instituting and/or allowing careless and ineffective product manufacturing protocols.

111.    As a result of Defendant's negligence, Defendant's Products had contents that did not possess the claimed characteristics and/or had contents that could cause substantial hair loss and scalp irritation.

112.    Defendant knew or reasonably should have known that Class Members such as Plaintiffs would suffer economic damages or injury and/or be at an increased risk of suffering

damage and injury, as a result of its failure to exercise ordinary care in the design of the Products by failing to conduct appropriate testing.

113.    Defendant's negligence caused or contributed to cause injuries and damages to Plaintiffs and the Class, caused Plaintiffs and the Class to suffer the harm and damage described herein, and also caused or contributed to cause Plaintiffs and the Class to overpay for a product that was worthless and/or worth much less than the sale price.

## COUNT V
### (Negligent Misrepresentation)

114.    Plaintiffs incorporates by reference all preceding paragraphs of this Class Action Petition as if fully set forth herein.

115.    Each time Defendant placed their Products for sale, Defendant made representations and omissions regarding their Products, as set forth above, including without limitation the representations that the Products were made with gentle ingredients and suitable for use as hair care products.

116.    Such representations were made by Defendant with the intent that Plaintiffs and the Class Members rely on such representations in purchasing Defendant's Products.

117.    Such representations were material to Plaintiffs' and the Class Members' purchase of Defendant's Products.

118.    Such representations were false.

119.    Defendant failed to use ordinary care and were negligent in making and/or allowing to be made the representations and omissions set forth herein.

120.    Plaintiffs and the Class Members relied on such representations and such reliance was reasonable under the circumstances.

121.    Plaintiffs and Class Members have been economically damaged by Defendant's negligent conduct with regard to the marketing and sale of the Products.

122.    As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class Members have suffered ascertainable losses of money.

## COUNT VI
### (Violations of Missouri Merchandising Practices Act)

123.    Plaintiffs incorporate by reference all preceding paragraphs of this Class Action Petition as if fully set forth herein.

124.    Plaintiffs Bell, Shewmaker and Missouri Class Members purchased Defendant's Products primarily for personal, family, or household purposes.

125.    Plaintiffs and Class Members are "person[s]" for purposes of the Missouri Merchandising Practices Act ("MMPA").  Mo. Rev. Stat. § 407.010.

126.    Defendant's Products meets the definition of "merchandise" for purposes of the MMPA.  Mo. Rev. Stat. § 407.010.

127.    Defendant's sale of the Products is a "sale" within the meaning of the MMPA. Mo. Rev. Stat. § 407.010.

128.    Defendant engaged in "trade" or "commerce" within the meaning of the MMPA. Mo. Rev. Stat. § 407.010.

129.    Under the MMPA, Defendant has a statutory duty to refrain from deceptive acts and practices.

130.    Pursuant to the MMPA, an unlawful practice is the use of "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression,

or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . .  in or from the State of Missouri."  Mo. Rev. Stat. § 407.020.

131.    Defendant used and employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and the concealment, suppression, or omission of material facts in connection with the sale or advertisement of the Products in trade or commerce in the State of Missouri, in violation of the MMPA.

132.    Defendant's conduct set forth above, including without limitation its packaging of their Products as suitable for use as quality beauty products, its failure to provide an adequate notice, disclaimer, or warning on the labels, and its failure to disclose that the Products were not gentle, did not provide enhanced health benefits, did not provide the advertised qualities, and would contribute to cause users to suffer hair loss, scalp irritation, thinning, breakage, balding during normal use, was unfair, deceptive, false and misleading and made knowingly by Defendant or without knowledge as to their truth or falsity and were therefore deceptions, frauds, false pretenses, false promises, and misrepresentations as described at § 407.020 RSMo, and therefore a violation of the MMPA.

133.    Defendants' conduct set forth above, and Defendants' failure to inform consumers of the true nature of the Products, also constituted the omission or suppression of a material fact in violation of § 407.020 RSMo in that Defendant's Products were not appropriate for use and would contribute to cause users to suffer hair loss, scalp irritation, thinning, breakage, balding and other issues during normal use.

134.    Defendant's conduct as set forth herein with regard to the marketing and sale of the Products constitutes unlawful, unfair and/or fraudulent business practices in violation of the MMPA.

26

135.    Defendant engaged in unlawful practices including deception, false promises, misrepresentation, and/or the concealment, suppression or omission of material facts in connection with the marketing and sale of the Products, all in violation of §407.020 RSMo.

136.    Defendant's conduct with regard to their Products was materially misleading, deceptive and was a proximate cause of economic damage to purchasers.

137.    Plaintiffs Bell and Shewmaker and the Class Members have suffered economic and other damages as a result of Defendant's conduct with regard to the marketing and sale of the Products.

138.    As a direct and proximate result of Defendant's illegal conduct, Plaintiffs Bell and Shewmaker the Missouri Class Members have suffered ascertainable losses of money.

139.    Defendant's conduct as described herein was intentional, done knowingly, in conscious disregard of the rights of Plaintiffs and other Class Members, and in violation of § 407.020 RSMo, and the regulations of the Attorney General of Missouri promulgated thereunder.

140.    Defendant's conduct is such that an award of punitive damages against Defendant is appropriate.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class described in this Class Action Petition, respectfully request that:

    A.  The Court certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure and adjudge Plaintiffs and counsel to be adequate representative thereof;

    B.  The Court enter an Order requiring each Defendant to pay actual and punitive damages to Plaintiffs and the other Members of the Class;

C.  The Court enter an Order awarding Plaintiffs, individually and on behalf of the other Members of the Class, the expenses and costs of suit, including reasonable attorneys' fees and reimbursement of reasonable expenses, to the extent provided by law;

D.  The Court enter an Order awarding to Plaintiffs, individually and on behalf of other Members of the Class, pre-and post-judgment interest, to the extent allowable; and,

E.   For such other and further relief as may be just and proper.


Date: August 18, 2020                          Respectfully submitted,

WHITE, GRAHAM, BUCKLEY,
& CARR, L.L.C

BY:_____/s/ *Bryan T. White*_____
              William Carr          MO 40091
              Bryan T. White        MO 58805
              19049 East Valley View Parkway
              Independence, Missouri 64055
              (816) 373-9080 Fax: (816) 373-9319
              bcarr@wagblaw.com
              bwhite@wagblaw.com

HORN AYLWARD & BANDY, LLC

BY:___*/s/ Thomas V. Bender*___
              Thomas V. Bender      MO 28099
              Dirk Hubbard,         MO 37936
              2600 Grand, Ste. 1100
              Kansas City, MO 64108
              (816) 421-0700
              (816) 421-0899 (Fax)
              tbender@hab-law.com
              dhubbard@hab-law.com

28

CLAYTON JONES, ATTORNEY AT LAW

BY:    */s/ Clayton A. Jones*
        Clayton Jones      MO 51802
        P.O. Box 257
        405 W. 58 Hwy.
        Raymore, MO 64083
        Office: (816) 318-4266
        Fax: (816) 318-4267
        clayton@claytonjoneslaw.com

**ATTORNEYS FOR PLAINTIFFS
AND CLASS MEMBERS**